PETER SZANTO 949-887-2369
11 Shore Pine
Newport Beach CA 92657

US BANKRUPTCY
DISTRICT OF OREGON

2018 JUN 26 PM 12: 12

PAUL

# United States Bankruptcy Court

## in and for the District of OREGON

### 1001 SW 5th Av., Portland OR 97204

| | |
|---|---|
| **In Re Peter Szanto** | **# 16 –bk-33185 pcm7** |
| **Debtor** | |
| =============== | **Adversarial 18-ap-03022-pcm** |
| US Trustee, plaintiff | |
| v. | **Debtor / Defendant's:** |
| Szanto, defendant | 1) **Statement of Unwillingness to Consent to Entry of Final Orders** |
| | 2) **Demand for Jury Trial** |
| | 3) **Affirmative Defenses 4) Admissions** |
| | 4) **General and Specific Denials** |
| | 5) **Answer** |
| | 6) **Counterclaim** |
| | 7) **Joinder of Counterclaim Defendants** |
| | Hon. Judge Peter C. McKittrick, presiding |

Comes now debtor, defendant in response to plaintiff's claims.

16-bk-33185        Response, Answer, Objections- June 24 --2018  – pg. 1

### a. *No Consent to Final Order or Judgment*

Pursuant to FRBP 7012(b), defendant **does not** consent to entry of final orders by the bankruptcy court.

### b. *Demand for Jury Trial*

Defendant prays this matter be tried to and by 12 of his peers, empaneled as a jury.

### c. *Objections to Plaintiff's False and Erroneous Facts*

**Plaintiff's facts as to the following paragraphs are in error:**

The following paragraphs in the claim are in error, confusing or misleading (numbers refer to plaintiff's paragraph numbers:

7. The term several is intended to confuse and mislead. If a specific number is alleged, it should be inserted specifically.

19. Pursuant to rule defendant used only the Union Bank accounts at the commencement of his Oregon Bankruptcy. Thereafter, court permission was obtained to use HSBC accounts.

Plaintiff, in an effort intentionally to mislead and bias this Court, knowingly identifies other accounts which are known by plaintiff to have at all times herein been under the sole and exclusive control of the Yankee Trust Corporation, defendant's spouse, defendant's children or related to defendant through the testamentary intentions of Susan Szanto (IE, designated as pay on death accounts with defendant as the beneficiary thereof.).

20. continues effort to mislead as described in # 19.

22. to the extent that Szanto erred in this regard, explanation thereof was stated at time of trial of this issue in November 2017.

24. This sentence is confusing and incomprehensible to defendant because it is not delimited as to time.

25. Defendant is unable to confirm or deny the HSBC balance because that bank account was controlled by Susan Szanto as of the petition date.

26. Defendant is unable to confirm or deny the Ford account balance because that bank account was controlled by Susan Szanto as of the petition date.

27. Defendant is unable to confirm or deny the Ford account "transfer credits" because that bank account was controlled by Susan Szanto prior to the petition date.

28. Defendant may have inadvertently or by mistake or through confusion made an erroneous check on the indicated form.

29.  Defendant may have inadvertently or by mistake or through confusion made an erroneous check on the indicated form.

33. Plaintiff's continuing efforts to confuse and mislead do not indicate what change – or the relevance of that change identified in this paragraph.

35. The change statement from "real estate activities" to "real estate activities" is an obvious clerical error; the allegation thereof is intended to mislead and confuse.

37.  As of the petition date, defendant had no control over the Yankee Trust Co.

39.     This pre-petition activity, if accurate, was permitted.

40.     This pre-petition activity, if accurate, was permitted.

41.  As of the petition date, defendant had no control over the Yankee Trust Co.

42. As of the petition date, defendant had no control over the Yankee Trust Co.

43. Defendant has previously admitted his misreading of this question, and has corrected same.

44. Defendant has previously admitted his misunderstanding of this question, and has corrected same.

45. Defendant's recollection is that he testified, or intended to testify that he was no longer using any other accounts besides the Union Bank accounts.

51. Defendant believes there were reporting errors at Union Bank regarding his the numbering of his various accounts and other Union Bank accounts controlled by Susan Szanto.

52. Defendant's spouse had access to the indicated account at the time specified and defendant did not use that account until permitted to do so by the Court.

53. Defendant's spouse had access to the indicated account at the time specified and defendant did not use that account until permitted to do so by the Court.

54.     This paragraph is confusing and incomprehensible.

55.     At about the time indicated HSBC reassigned account numbers due to changes in corporate structure and the "opening" was not communicated to defendant.

56.     During this time, Susan Szanto had access to the indicated account and may have made transactions for her own personal and individual benefit.

62. Promptly is a purposefully ambiguous term. Defendant complied with his obligations as soon as practicable.

63. Defendant has been deprived of the records of these events and cannot confirm nor deny their accuracy.

64.     The account in question was not under defendants control until the allowed by the Court.

65.     Defendant signed the attestation with the understanding that the Court's grant of permission to use the HSBC account was implicit in the statement he signed; it was inadvertence and a good faith error if the court's permission did not waive, or add to, the approved list of bank accounts.

If defendant's presumption was in error, the error was an inadvertence of failing to understand the correct facts OR excusable neglect based on the presumption that the Court's permission changed the reporting requirements which had been noticed to all parties and the trustee.

The US Trustee was an active participant in all discussions, motions and hearings related to debtor maintaining an account at a non-list financial institution. The trustee was required to speak about this issue so that the debtor was not lulled into the security that a matter about which the trustee knew was being suppressed so as to allow debtor to fall into a trap of failed reporting about which the trustee fully was aware.

The legal term for this behavior is entrapment and it reflects upon the trustee's efforts purposefully not to inform so as to create vexatious litigation

67.     "Falseness," if such there was a result of deficiencies of Union Bank's online system versus Union Bank's printed statements (to which defendant had no access) and which were printed specially for the trustee. Had defendant been apprised of erroneous reporting, he would have taken steps to resolve the problem.

Defendant had no intent to falsify and the differences which may have occurred were not within defendant's control.

The correct term for what occurred is that balances and representations of activity not within defendants' control differed on the internet version versus the paper version.

68.     "Falseness," if such there was a result of deficiencies of Union Bank's online system versus Union Bank's printed statements (to which defendant had no access) and which were printed specially for the trustee. Had defendant been apprised of erroneous reporting, he would have taken steps to resolve the problem.

This problem also resulted from a Union Bank account that was not properly closed by Union Bank when the "debtor in possession" account was opened.

Defendant had no intent to falsify and the differences  which may have occurred were not within defendant's control.

The correct term for what occurred is that balances and representations of activity not within defendants' control differed on the internet version versus the paper version.

72.     Defendant is unaware of the 716 NW Hoyt address.

The address debtor inserted on his LLC application was 715 NW Hoyt, Portland, which is the correct address for the LLC. If another address appears, it was a mistake in data entry or perhaps subsequent processing by the Secretary of State.

73.     Prior to transfer to the LLC, a courtroom discussion occurred whereat, defendant requested and the Court assented to the change in business structure for Income Tax efficiency reasons that were discussed on the record.

The Court specifically stated that no permission or formality was required for such a change in business structure, because the underlying business remained a vested sole in a dingle proprietor and proprietorship.

75. Defendant is currently deprived of the documents to confirm or deny these deposits.

76. Defendant is currently deprived of the documents to confirm or deny these deposits.

77. Defendant's understanding at the time of the Courtroom that the change in business structure, because before and after the structure remained a sole proprietorship vested solely in debtor was neither a sale, transfer or other disposal and was not outside the ordinary course of business.

78. Because only business structure (IE, business form) changed, no assets of the Bankruptcy estate changed.

79. Transfers were not disbursements, but merely the change of business structure.

80. Defendant is currently deprived of the documents to confirm or deny these deposits.

81. Defendant is currently deprived of the documents to confirm or deny this balance.

82. Defendant's understanding at the time of the Courtroom that the change in business structure, because before and after the structure remained a sole proprietorship vested solely in debtor was neither a sale, transfer or other disposal and was not outside the ordinary course of business.

83.     Because only business structure (IE, business form) changed, no assets of the Bankruptcy estate changed.

84.     Transfers were not disbursements, but merely the change of business structure.

85.     Defendant is currently deprived of the documents to confirm or deny this balance.

86.     Clerical errors occurred to prevent filing.

87.     At all times plaintiff was aware of the process of transfers to the HSBC accounts.

92.  Defendant produced, prior to the hearing, those documents available to him based on the limited notice he had for the meeting.

        The trustee was devious and deceptive by failing to acknowledge receipt of many of these materials

93.  Defendant informed the trustee that a Motion for a Motion for a Protective Order was before the Court and the trustee postponed the hearing. Defendant did not refuse to answer questions.

97. The plaintiff's recitation of facts is confusing and incomprehensible and cannot be commented upon by defendant.

99. In the interim between 8-16-16 and the 10/18/17 certain accounts which were not used came to defendants attention and he supplemented his schedules as required.

100. Defendant is unaware of this statement or the context in which it may have been made; and offers the caution that much of plaintiff's projections about defendant's alleged misdeeds are allegorical interpretations derived from the thousands of times plaintiff has been able to put down other debtors in actions wholly unrelated to the facts and events herein.

101. Defendant is unaware of this statement or the context in which it may have been made.

102. Defendant is unaware of this statement or the context in which it may have been made.

103. In 2014 a Bank of America bank account was opened for the Yankee Trust using the Yankee Trust's Tax payer identification number.

104. The trustee was unable to conclude the hearing, because questions were asked without notice which were incapable of immediate accurate response without research.

110. If defendant failed to appear, he did so with permission and is currently looking for these records.

112. Litigation Services used credit card numbers which defendant had provided to predecessor companies without permission. The charges were accepted, because these accounts had been maintained as active by Susan Szanto.

113. Litigation Services charges to these credit cards was fraudulent and unknown to debtor.

114. Debtor had cash credits from Litigation Services' predecessor companies which he had been advised were available to pay for charges in 2017.

Comments attributed to debtor are incorrect. A transcript, if provided will be explained as to the details.

119. If certain accounts were not disclosed, any such lack of disclosure was merely an oversight, mistake or

inadverdence due to records being unavailable to debtor
or records being misplaced or lost.

125.    Silver City reporting is likely an Idaho business entity
located in the Jordan Valley, in Silver City, Idaho.

126.    Defendant is unaware of the question to which this
comment refers, and the presentation is confusing and
inaccurate.

127.    Defendant stated he was in Jordan Valley, not
necessarily that he was within the city limits of Jordan
Valley, Oregon.

128-132 The area of Jordan Valley from where debtor appeared
telephonically is approximately 20 miles from the Boise, ID
international airport. After the hearing defendant flew from
Boise to Santa Ana CA arriving there about 3PM. Santa Ana
CA airport is less than 300 yards from the FEDEX office
from which debtor mailed the package in question.

136. Debtor was deprived of the ability to use his E-Trade
account after 11-27-17. Thereafter, money movements were
not within defendants control and likely occurred automatically
based on previously set financial events and circumstances.

137.     Debtor's E-Trade accounts were set to make automatic investments in foreign currency accounts which were held in the United States.

140.     Debtor is unaware of these transfers.

141.     Debtor is unaware of these transfers.

143.     Debtor provided, or was relieved from providing, all of of the documents requested by the trustee.

145. Debtor turned over all books, documents, records and papers relating to property of the state which were available to him.

147.     Debtor did not file the marital agreement referenced.

159. Susan Szanto will insert defendant's name and social security number to complete pay on death certifications and instructions on accounts she opens.

160. Debtor disclosed all accounts which he was required to disclose.

166.     Debtor filed Susan Szanto's dissolution claims in this Bankruptcy proceeding as a creditor's claim.

Debtor retains all right to supplement the recitation and explanation herein.

## d. *CAVEAT, NO WAIVER*

The within answer, the within affirmative defenses, the within denials and the within other responses herein do not waive or alter any of the contentions in the accompanying Motion to Strike.

Debtor retains all right to supplement as necessary herein.

## e. *ANSWER to FIRST CLAIM FOR RELIEF*

1. At all times debtor's actions were undertaken in the best of good faith in regard of full, complete and totally transparent Bankruptcy disclosure and re-organization.
2. At no time, within one year before the petition date did debtor intentionally hinder, delay, or defraud any creditor or the chapter 7 trustee by transferring, removing or concealing any property enumerated in [Docket Entry 1, ¶ 171].
3. Debtor generally denies all assertions and all aspects of this claim.

4. Debtor affirmatively states as defense that any access to the property enumerated may have been undertaken automatically based on pre-set instructions which debtor was unable to alter after access to his accounts was denied to him.

5. Debtor believes that control over the accounts enumerated was within the power and command of plaintiff and or the Chapter 7 trustee to manipulate and alter so as to cast aspersions on defendant's credibility and demeanor.

6. Since seizing control over the enumerated accounts, plaintiff and the Chapter 7 trustee have engaged in a campaign of terror and intimidation against defendant and the institutions enumerated in the complaint and elsewhere so as to conceal their own manipulation of the accounts in question with the intent of self-enrichment from the Bankruptcy estate.

### *f. ANSWER to SECOND CLAIM FOR RELIEF*

7. At all times debtor's actions were undertaken in the best of good faith in regard of full, complete and totally transparent Bankruptcy disclosure and re-organization.

8. At no time, after the bankruptcy case was filed did debtor intentionally hinder, delay, or defraud any creditor or the chapter 7 trustee by transferring, removing or concealing any property enumerated in [Docket Entry 1, ¶ 173].

9. Debtor generally denies all assertions and all aspects of this claim.

10. Debtor affirmatively states as defense that any access to the property enumerated may have been undertaken automatically based on pre-set instructions which debtor was unable to alter after access to his accounts was denied to him.

11. Debtor believes that control over some of the accounts enumerated was within the power and command of plaintiff and or the Chapter 7 trustee to manipulate and alter so as to cast aspersions on defendant's credibility and demeanor.

12. Since seizing control over the enumerated accounts, plaintiff and the Chapter 7 trustee have engaged in a campaign of terror and intimidation against defendant and the institutions enumerated so as to conceal their own manipulation of the accounts in question without accountability and without consequence.

## *g. ANSWER to THIRD CLAIM FOR RELIEF*

13.  At all times debtor's actions were undertaken in the best of good faith in regard of full, complete and totally transparent Bankruptcy disclosure and re-organization.

14.  Debtor is without sufficient information from, or time indication marker as to, the statements in this claim so as fully to comprehend what he is accused of doing or not doing or how he is accused of doing whatever is alleged.

15.  At all times, since the commencement of this Bankruptcy debtor has provided readily, <u>and as requested</u> books, papers, documents, records regarding his financial condition.

16.  At no time has debtor concealed, destroyed, mutilated falsified or failed to keep or preserve any recorded information.

17.  Periodically, **plaintiff** has pretended not to have received materials from debtor.

18.  Likewise, plaintiff has knowingly made duplicative requests so as to intentionally harass and annoy debtor for her own amusement.

19.  Debtor generally denies all assertions and all aspects of this claim.

20. Debtor affirmatively states as defense that he undertook the production of books, papers, documents, records regarding his financial condition with the utmost care and diligence and if there were deficiencies or complaints related to his performance, thereof, those should have been specifically raised at the time of occurrence and not by ambush years and months later. The defense of *laches* is interposed as to matters which could have been asserted earlier.

21. Debtor's further affirmative defense is the fact that the breadth and depth of the allegations against him demonstrate ample presentation of book, records, etc so as to make the sweeping vile and offense allegations that have been made.

22. Failure to act, if such there were, were justified by circumstances such as failures to receive complete and adequate notice, failures to receive proper and timely requests for information and documents.

23. Since seizing control over the debtor's financial life, plaintiff and the Chapter 7 trustee have engaged in a campaign of terror and intimidation against defendant so as to impair all of his ability to secure records to disprove various of the allegations made herein.

## h. ANSWER to FOURTH CLAIM FOR RELIEF

24.     At all times debtor's actions were undertaken in the best of good faith in regard of full, complete and totally transparent Bankruptcy disclosure and re-organization.

25.     Debtor is without sufficient information from this claim so as full to comprehend what he is accused of doing or how he is accused of doing whatever is alleged.

26.     The presentation of the claims in this allegation is confusing and unclear, because the sentences are incomplete.

27.     Statements made by debtor were based on information obtained and available to debtor which he believed to be true at the time said statements were made by him.

28.     Balances at Union Bank were based on materials available to debtor at the time the Union Bank statements were accessed by him online.

29.     Debtor cannot answer claim 4, # 177, item b without additional specific facts and information about the allegation.

30.     Debtor cannot answer claim 4, # 177, item c without additional specific facts and information about the allegation.

31.     Debtor cannot answer claim 4, # 177, item d without additional specific facts and information about the allegation.

32.     Debtor cannot answer claim 4, # 177, item e without additional specific facts and information about the allegation.

33.     Debtor cannot answer claim 4, # 177, item f without additional specific facts and information about the allegation.

34.     Debtor cannot answer claim 4, # 177, item g without additional specific facts and information about the allegation.

35.     Debtor cannot answer claim 4, # 177, item h without additional specific facts and information about the allegation.

36.     Debtor cannot answer claim 4, # 177, item i without additional specific facts and information about the allegation.

37.     Debtor cannot answer claim 4, # 177, item j without additional specific facts and information about the allegation.

38.     Debtor cannot answer claim 4, # 177, item k without additional specific facts and information about the allegation.

39.     Debtor cannot answer claim 4, # 177, item l without additional specific facts and information about the allegation.

40.     Debtor generally denies all assertions and all aspects of this claim irrespective of the fact that he is perplexed and confused about what is alleged to have done or failed to do.

41.     Debtor affirmatively states as defense that whatever statements he may have made which may be the substance of this claim, he made those statements in good faith and avers that said statements were true at the time they were made.

## *i.  ANSWER to FIFTH CLAIM FOR RELIEF*

42.     At all times debtor's actions were undertaken in the best of good faith in regard of full, complete and totally transparent Bankruptcy disclosure and re-organization.

43.     The allegation of false bank balance report is incorrect. Debtor reported those balances he was provided by Union Bank.

**44.     Debtor intentionally incurred no credit card debt.**

45.     In 2012 debtor used a credit card belonging to Susan Szanto on which he was an authorized user with one or more of the predecessor companies of Litigation Services. Thereafter, debtor was no longer an authorized user of said credit card. In 2017. Marissa Henderson of Litigation services at the behest of plaintiff and/or Nicholas Henderson used that credit card (the number being still valid and active and still being used by Susan Szanto) rather than the cash credits owed to Peter Szanto to pay debts owed to Litigation Services. This despicable act was done solely to contrive and create the allegation herein. That is, the close personal relationship between Nicholas Henderson and Marisa Henderson contrived to use a credit card without authorization so as to invent and create facts to be used against defendant in the claim herein.

46.     Peter Szanto LLC was a change in business structure only which was authorized by this Court and required no additional reporting, because no financial or accounting changes occurred. And, because the Court stated that no change of ownership was occurring.

47.     Transfer to Peter Szanto LLC, if such there was, was merely for the purpose of accounting efficiency and had no material affect on aspect of the Bankruptcy, save to improve accounting efficiency and operating result reporting.

48.     Debtor affirmatively states as defense that matters reported as to Union Bank were reported in good faith.

49.     Debtor affirmatively states as defense that matters relating to any credit card usage were not authorized by him at any time after 2013.

50.     Debtor affirmatively states as defense that the name change as to Peter Szanto, LLC was undertaken solely to increase and enhance tax reporting efficiency as demanded by the IRS.

51.     Debtor affirmatively states as defense that no transfers within the meaning of that word occurred, merely continuing reorganization under Chapter 11 so as to enhance and improve efficiency of reporting.

## *i. ANSWER to SIXTH CLAIM FOR RELIEF*

52.     At all times debtor's actions were undertaken in the best of faith in regard of full, complete and totally transparent Bankruptcy disclosure and re-organization.

53.     All allegations of debtor swearing a false oath or oaths are untrue.

**54.**     All statements made by debtor were believed by debtor to be true at the time he made said statements.

55.     Plaintiff's allegations are inchoate and make no specific allegation of any improper action by defendant.

56.     Debtor affirmatively states as defense that all matters stated to be true were believed by debtor to be true at the time he made, if such he did, any of those statements.

57.     Debtor affirmatively states as defense that if any matter which he stated was untrue that any such statement was made by mistake, by inadvertence and / or by excusable neglect.

58.     Debtor affirmatively states as defense that if any matter which he stated was untrue that any such statement was made without full knowledge of the facts or because facts were by inadvertence, mistake, excusable neglect or the acts of others unavailable to debtor.

59.     Debtor generally denies all assertions and all aspects of this claim irrespective of the fact that he is perplexed and confused about what is alleged to have done or failed to do.

60.     Debtor affirmatively states as defense that whatever statements he may have made which may be the substance of this claim, he made those statements in good faith and avers that said statements were true at the time they were made; if in fact they were made at all by him.

### k.  ANSWER to SEVENTH CLAIM FOR RELIEF

61.     At all times debtor's actions were undertaken in the best of good faith in regard of full, complete and totally transparent Bankruptcy disclosure and re-organization.

62.     All allegations of debtor swearing a false oath or oaths are untrue.

**63.**     All statements made by debtor were believed by debtor to be true at the time he made said statements; if said statements were actually made.

64.     Plaintiff's allegations are inchoate and make no specific allegation of any specific improper action by defendant.

65.     Debtor affirmatively states as defense that all matters stated to be true were believed by debtor to be true at the time he made any of those alleged statements.

66.     Debtor affirmatively states as defense that if any matter which he stated was untrue that any such statement was made by mistake, by inadvertence and / or by excusable neglect.

67.     Debtor affirmatively states as defense that if any matter which he stated was untrue that any such statement was made without full knowledge of the facts or because facts were inadvertently unavailable to debtor, or the incorrect facts were provided to debtor upon which to predicate his statements.

68.     Debtor generally denies all assertions and all aspects of this claim irrespective of the fact that he is perplexed and confused about what is alleged to have done or failed to do.

69.     Debtor affirmatively states as defense that whatever statements he may have made which may be the substance of this claim, he made those statements in good faith and avers that said statements were true at the time they were made.

70.     Debtor objects to the near identical nature of this cause based on its similarity to Claim 6.

## I. ANSWER to EIGHTH CLAIM FOR RELIEF

71.     At all times debtor's actions were undertaken in the best
of good faith in regard of full, complete and totally transparent
Bankruptcy disclosure and re-organization.

72.     All allegations of debtor swearing a false oath or oaths
are untrue.

**73.**     All statements made by debtor were believed by debtor
to be true at the time he made said statements.

74.     Plaintiff's allegations are inchoate and make no specific
allegation of any specific improper action by defendant.

75.     Debtor affirmatively states as defense that all matters
stated to be true were believed by debtor to be true at the
time he made those statements.

76.     Debtor affirmatively states as defense that if any matter
which he stated was untrue that any such statement was
made by mistake, by inadvertence and / or by excusable
neglect or because he based them on incorrect states made
to him.

77.     Debtor affirmatively states as defense that if any matter
which he stated was untrue that any such statement was
made without full knowledge of the facts or because facts
were inadvertently unavailable to debtor.

78. Debtor generally denies all assertions and all aspects of this claim irrespective of the fact that he is perplexed and confused about what is alleged to have done or failed to do.

79. Debtor affirmatively states as defense that whatever statements he may have made which may be the substance of this claim, he made those statements in good faith and avers that said statements were true at the time they were made.

80. Debtor objects to the near identical nature of this cause to that of other causes of action such that similar allegations are made with the only difference being the point in time of the alleged behavior. Debtor contends that allegations regarding similar events do not create a separate cause of action.

## m. ANSWER to NINTH CLAIM FOR RELIEF

81. The ninth claim for relief is not a claim for relief at all, but rather a conclusion. No specific allegations are made.

82. The ninth claim for relief is not a claim at all, but rather a duplication of all the other causes of action compressed to a presumed truth without any facts, statements or even plaintiff's usual expansive elaboration of non-existent facts.

83.   Defendants' answer is: no, I did not submit a false claim.

84.   At all times debtor's actions were undertaken in the best
      of good faith in regard of full, complete and totally transparent
      Bankruptcy disclosure and re-organization.

85.   All allegations of debtor swearing a false oath or oaths
      are untrue.

**86.**   All statements made by debtor were believed by debtor
      to be true at the time he made said statements.

87.   Plaintiff's allegations are inchoate and make no specific
      allegation of any specific improper action by defendant.
      (IE, plaintiff's allegations could just as easily refer to any
      of the Bankruptcy relief petitions he has filed.

88.   Debtor affirmatively states as defense that all matters
      stated to be true were believed by debtor to be true at the
      time he made those statements.

89.   Debtor affirmatively states as defense that if any matter
      which he stated was untrue that any such statement was
      made by mistake, by inadvertence and / or by excusable
      neglect or based on incorrect information he received.

90.   Debtor affirmatively states as defense that if any matter
      which he stated was untrue that any such statement was
      made without full knowledge of the facts or because facts
      were inadvertently unavailable to debtor.

91.    Debtor generally denies all assertions and all aspects of this claim irrespective of the fact that he is perplexed and confused about what is alleged to have done or failed to do.

92.    Debtor affirmatively states as defense that whatever statements he may have made which may be the substance of this claim, he made those statements in good faith and avers that said statements were true at the time they were made.

93.    Debtor objects to the near identical nature of this cause to that of other causes of action such that similar allegations are made with the only difference being the point in time of the alleged behavior. Debtor contends that allegations regarding similar events do not create a separate cause of action.

### *n.  ANSWER to TENTH CLAIM FOR RELIEF*

94.    The tenth claim for relief is not a claim for relief at all, but rather a conclusion. No specific allegations are made.

95.    The tenth claim for relief is not a claim at all, but rather a quasi-summation of all the other causes of action compressed to a presumed truth without any facts, statements or even plaintiff's usual expansive elaboration of non-existent facts.

96.     Defendants' answer is: no, I did not withhold any
information of any sort from an officer of the estate.

97.     At all times debtor's actions were undertaken in the best
of good faith in regard of full, complete and totally transparent
Bankruptcy disclosure and re-organization.

98.     Plaintiff's allegations are inchoate and make no specific
allegation of any specific improper action by defendant.
(IE, plaintiff's allegations could just as easily refer to any
of the Bankruptcy relief petitions he has filed.

99.     Debtor affirmatively states as defense that all material
requested to be produced by debtor was produced.

100.    Debtor affirmatively states as defense that if any material
which he was requested to produce was not produced that
failure was due to mistake, to inadvertence and / or to
excusable neglect.

101.    Debtor affirmatively states as defense that if any
material which he was requested to produce was not
produced then it occurred because debtor was without full
knowledge of the facts or because facts were inadvertently
unavailable to debtor so as to make production possible.

102.    Debtor generally denies all assertions and all aspects of
this claim irrespective of the fact that he is perplexed and
confused about what he is alleged to have done or failed to
have done.

103.    Debtor affirmatively states as defense that whatever incidents may be the substance of this claim, those incidents occurred while debtor was acting in good faith and complete honesty.

## *o.  ANSWER to ELEVENTH CLAIM FOR RELIEF*

104.    Debtor is without sufficient information to ascertain what lawful order he is alleged to have refused to obey and thereon generally and specifically denies any such contention.

105.    Debtor is without sufficient information to answer, because violations are stated without specificity as to action, time or fact pattern.

106.    At all times debtor's actions were undertaken in the best of faith in regard of full, complete and totally transparent Bankruptcy disclosure and re-organization.

107.    Plaintiff's allegations are inchoate and make no specific allegation of any specific improper action by defendant. (IE, plaintiff's allegations could just as easily refer to any of the Bankruptcy relief petitions he has filed.

108.    Debtor affirmatively states as defense that all orders of which he was noticed were carried out as so ordered.

109.    Debtor affirmatively states as defense that if any order
by which he was directed was not carried out, that failure was
due to mistake, to inadvertence and / or to excusable neglect.

110.    Likewise, if an order was not carried out, debtor may
have received instructions which countermanded said orders.

111.    Debtor affirmatively states as defense that if any order
he was ordered to do was not done then that failing occurred
because debtor was without full knowledge of the facts or
because facts were inadvertently unavailable to debtor so as
to make carrying out of said order an impossibility.

112.    Debtor generally denies all assertions and all aspects of
this claim irrespective of the fact that he is perplexed and
confused about what he is alleged to have done or failed to
have done.

113.    Debtor affirmatively states as defense that whatever
incidents may be the substance of this claim, those incidents
occurred while debtor was acting in good faith, transparently
and in complete honesty.

## *p. COUNTERCLAIMS*

## 1. Failure to Supervise / Negligent Supervision

The legislated duty and mission of the U. S. Trustee is to
supervise Bankruptcy Debtors. In this case, rather than supervise, the

U. S. Trustee lay in wait, in anticipation and surreptitious fabrication, that some misdeed might occur.

For example, instead of catching the Union Bank discrepancy when it first arose, the U.S. Trustee allowed the alleged problem to compound for 14 months. Thus, rather than solving the problem of erroneous reporting by Union Bank, (when it first occurred) the U.S. Trustee deviously savored, plotted and planned to attack debtor upon a problem which the U.S. Trustee itself failed adequately to monitor.

This intentional lack of supervision strategy, in a multitude of areas allows the U.S. Trustee to set-up Bankruptcy debtors for slaughter by allowing situations to get out of control. The U.S. Trustee intentionally compounds problems with full knowledge that Judge McKittrick has profound antipathy for even the most minor transgressions (debtor was even scolded for securing the sharp ends of staples in his filings with tape; (a protocol learned through employment at the California Court of Appeals) which prevents staple puncture wounds which are sometimes severe).

The instant claim contends that it is the intent and goal of the U.S. Trustee to allow debtors to make mistakes through lack of supervision. When the transgression, as alleged herein, is sufficiently large, the U.S. Trustee will pounce to eradicate the debtor with unnecessary debtor's meetings, fabricated evidence and innuendos about irrelevant matters so as fully to debase, denigrate and humiliate the debtor.

The U.S. Trustee's goal is career enhancement and ever increasing pay and retirement packages. No one at the U.S. Trustee's office is going to make any real money from helping and supervising debtors. The big reward in the form of advancements and bonuses comes from the dramatic crushing of scalawag debtors, like debtor herein, on the basis of situations which were purposefully allowed to get "out-of-control" and become unmanageable, all to debtor's detriment.

Thereupon, debtor asks that the complaint against him be dismissed and that he be awarded such damages as will be proven which demonstrate the skill with which the U.S. Trustee manipulated a situation so that it would become commendation and pay raise opportunities; rather than boring "help-the-debtor through difficulties dramas".

## 2. Spoliation / Manipulation of Evidence and Fraudulent Use of Credit Card

Counter-defendant, in concert with Nicholas Henderson and Marissa Henderson (an owner of Litigation Services) obtained the numbers of credit cards which debtor had used in 2012 and 2013 to pay predecessor companies of litigation services.

In 2017, counter-defendants contrived the following scheme: without authorization, they would charge deposition bills to the card numbers debtor used in 2012-13. Even though, debtor no longer used those credit cards, the cards were still active in Susan Szanto's name and the charges were accepted.

*Counter Defendant U.S. Trustee*

Plaintiff then made "fire-and-brimstone" for debtor by alleging that debtor purposefully used those cards himself (those were counter-defendants' known falsehood). Plaintiff then excoriated debtor about the issue of cash – green cash – so as to hold debtor up to scorn and ridicule based on a scheme of payment (paying with green cash credits from 2013) which the two Hendersons and plaintiff had intentionally altered and made disappear without debtor's knowledge or consent.

Counter-plaintiff contends this was spoliation of evidence, because debtor's cash credits were made to disappear. Spoliated evidence and fraud occurred by unauthorized use of credit cards which were authorized by neither Peter Szanto nor Susan Szanto.

Damages as per proof are requested.

### *q. Joinder*

Nicholas Henderson and Marissa Henderson, counter-defendants are herewith and hereby mandatorily joined into this action

Respectfully,

Dated 6-25 / 2018     _/s/_ _____ Peter Szanto

# PROOF OF SERVICE

My name is Maquisha Reynolds, I am over 21 years of age and not a party to the within action. My business address is PO Box 14894, Irvine CA 92623. On the date indicated below, I personally served the within:

<u>Answer</u>   upon:

Office of the US Trustee

620 SW Main St. # 213

Portland OR 97205

Nicholas Henderson          Marissa Henderson

117 SW Taylor St.            3770 Howard Hughes Pkway

Portland OR 97204           Las Vegas NV 86169

by mailing copies to the above parties *via* 1st class mail, postage prepaid, or by e-mail.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Irvine CA.

Dated 6-25-2018 *_/s/ Maquisha Reynolds_* **Maquisha Reynolds**

# FedEx

Express

ORIGIN ID:DTHA        (949) 887-2369
SZANTO
SZANTO
P.O.BOX 14894

IRVINE, CA 92623
UNITED STATES US

SHIP DATE: 25JUN18
ACTWGT: 0.50 LB
CAD: 112243018/INET3980

BILL SENDER

TO  CLERK-DIST OREGON
    US BANKRUPTCY COURT PORTLAND
    1001 SW 5TH AVE #700
    ROOM 700 @ 1001 SW 5TH AV
    PORTLAND OR 97204
    (503) 610-0865            REF:
    INV:
    PO:              DEPT:



FedEx
Express

E

**TUE - 26 JUN 3:00P**

**STANDARD OVERNIGHT**

TRK#
0201    7725 6264 5182

**WS MRIA**            97204
                OR-US   **PDX**



Extremely Urgent

FedEx Ship Manager - Print Your Label(s)

6/25/2018